Next we have Henry v. Shah, is that right? Henry v. Shah, is that right? Henry v. Shah, is that right? Good morning, Your Honor. May it please the Court, David Force on behalf of the defendants, I'd like to reserve five minutes for my rebuttal. This Court should reverse the denial of qualified immunity because the Supreme Court has recognized that governmental employees do not have unfettered free speech rights. That is true for high-level executives like Ms. Henry, who impaired her and the Department of Health's ability to interact with local health boards during the COVID-19 pandemic. Moreover, even if Ms. Henry was able to prove a constitutional violation, it is also her burden to show that the right was clearly established at the time. Counsel, if I might start with our jurisdiction. In order for us to have jurisdiction over this interlocutory appeal, we can't be looking at fact issues, correct? You can't be looking at disputes of material facts and deciding on those material facts, that's correct, Your Honor. So the way that I see that persons asserting qualified immunity trying to deal with that problem of appellate jurisdiction is to admit the opposing party's version of the facts and say, assume arguendo that that's so, okay? If we do that, though, doesn't that get right back to a fact issue that precludes qualified immunity and leaves it for trial? Pardon me. No, because even assuming the plaintiff's version of facts, in this case, the constitutional rights under Pickering, in this case, are not clearly established, even if we assume those rights. And moreover, the rights in this particular case, or the facts in this case, are not in dispute. We know what happened in this case. We know Ms. Henry sent the email, undisputed. We know there was a disruption at the February 8th meeting with SHRD. That's Ms. Henry's version of the events. Dr. Shaw, who was also there, doesn't dispute that version of events. Then we have the unchallenged statements that other local health boards were made aware of Ms. Henry's email, and those local health boards had issues with the Department of Health and from Ms. Henry's email. Counselor, I'm not sure I agree with your characterization of that being unchallenged. I mean, there was, there's a dispute about whether the evidence regarding the effect on local health jurisdictions was actually substantial and material enough, and whether her email was the cause of any disruption versus other pre-existing or exacerbating conditions like the hiring of personnel who were, other personnel, both, you know, before and after the email. Other personnel who sent similar email, it's my understanding, right, that there is pre-existing tension, essentially, between the state and the local health jurisdictions. There was some pre-existing tension between the Department of Health and the local health boards, and Ms. Henry, in her response, only addressed Spokane Health Regional Board. She did not address the other local health boards that she dealt with, and that portion was uncontradicted. So other than the testimony that there was some, so there was questioning in the deposition about who, when, evidence, any sort of specifics, so from what I can see, there is a conclusory assertion, a general assertion, that there were, that the email was raised without any specifics. Why is that enough to meet the defendant's burden at summary judgment? Because the burden is on the plaintiff, Ms. Henry, to establish a dispute of material facts, and in this particular case, she doesn't challenge those other findings. All she says is that they couldn't identify the specifics, but that's not a challenge to those underlying facts. And moreover ... That seems right there, exactly why this is going back to Judge Fitzwater's question. You take the facts as alleged, and we accept those, and now you're saying, but she can't dispute other facts which have no specifics. That makes no sense to me in the summary judgment context. Well, in summary judgment, she's required to offer evidence that disputes the fact that the department came up and said, other local health districts were disrupted in this situation. She's required to put on evidence of that. She did not. Let me go back to a more fundamental question, which is where I think you started out. You're basically saying there's no clearly established law. And so we have Pickering, of course, and that's well briefed by both parties. But what about the Freitag case? Why doesn't that basically give fair warning that if you have this kind of speech and it's made as a private citizen, that you have the ability to make this kind of a complaint? The Freitag case is not applicable in this particular situation in that it only deals with one factor. The Pickering test is a multifactorial test. I understand. But is Freitag clearly established law to put the individual's county in otherwise unnoticed? In this particular case, no. It's not even a fraction? I mean, you're saying it has no relevance at all? It's a portion. Okay. But, Your Honor, in this particular case, when you're dealing with a balancing test like Pickering, you have to take all the factors that are weighing in favor of protected speech versus not protected speech and then determine if all those factors that you're analyzing are clearly established. In this particular case, Freitag doesn't do that. Freitag doesn't balance those other factors, such as the disruption to the other local health boards, the lack of trust created by Ms. Henry's email, the damage to that relationship, that it was her job duty to discuss and analyze and help those local health boards respond to the pandemic. Additionally, Ms. Henry was an assistant secretary of the Department of Health. That high-level status is far different than we had in the Freitag case. And those factors, when you look at all of those factors combined, that's what has to be clearly established in order to survive summary judgment. In this case, the Freitag case doesn't do that. And in this case, that's where the plaintiff is missing from the analysis on the clearly established element. As this Court recognizes the fact that the plaintiff is a private citizen, is that in dispute here, that she endeavored to speak as a private citizen? That's only one of the factors. I understand. But let's go one by one. Sure. She attempted to speak as a private citizen, even though the health board did recognize her as a Department of Health employee. So what you've then focused on are, going down the line of other pickering factors, this disruption. But when I look at that, I'm led to conclude there seems to be a dispute as to how much or the degree of disruption. What is your response to that? Well, that's why it's not clearly established, Your Honor. Well, it's not clearly established or it raises a material issue of fact. Even if we accept Ms. Henry's version of the facts, if that is a disputed fact, which I do not believe it is, I believe it's a dispute of a legal conclusion. But even if we assume that, for purposes of clearly established law, there is no—the factors outlined in pickering are necessary to establish the clearly established element. And you have to consider all of them, not just one. And in fact, when you look at whether she was speaking as a private citizen, this court in Barone actually addressed that it's a practical analysis. It's not a one-factor-fits-all analysis. So she may have intended it to be a private citizen and sent from her private account, but it was in relation to her specific job duties as an assistant secretary of health. We have multiple cases, starting from pickering itself, which says just because the private speech is related to the plaintiff's job doesn't make it within the scope of their job. And in fact, I mean, pickering itself was a teacher writing to his school board complaining about how the school board was spending education funds that was 100 percent related to their job as a teacher, but found not to be—well, still protected private speech. So case after case, and other cases which say if it's related, but not actually within the scope of their job duties, it is protected. It is true that that's what it says, but in this particular case, it is specifically her job duty to coordinate the response. But that is a disputed fact. There is no dispute as to her job duties in this particular case. The only evidence in the record as to what Ms. Henry's job duties are comes from the job description and the termination letter from Ms. Tortovich. But she testified in her deposition that she'd never seen her job duties written out, correct? That's correct. But she never disputed that those were her actual job duties. She is disputing whether she had any—I mean, she was commenting on a personnel decision by the district in which she resides, and she is disputing, is my understanding, whether commenting on such personnel decisions was within her scope of her job. Yes, and that is why the clearly established element isn't met in this case, Your Honor. If we move to the clearly established element, it is not clearly established that that discussion of a personnel decision directly related to the COVID response from SHRD is not within her job duties. Well, if it's a factual dispute, whether it's within the scope of her job duties, if we resolve that factual dispute, we assume that it would be resolved in her favor because she is the non-moving party, then it would not be in her job duties, and then we apply. Then we consider whether it is clearly established that someone who speaks about something that is not within their job duties is speaking as a private citizen, and the answer would have to be yes. I see that I'm into my rebuttal. May I respond, Your Honor? Again, the analysis is not one factor, or one element. This is a factor test, and the factors all weigh in favor of this is not private speech because it is related to the COVID response that she helped coordinate at the local level. Moreover, Ms. Tortovich specifically told her there is nothing the Department can do about SHRD's decision to terminate Dr. Watts, and she went ahead and made a statement on that very topic in direct contradiction of that, which is an element that this Court considers under DALIA to determine whether that's private speech or not. And so given all of the factors, it is not clearly established that the Department's decision was a constitutional violation, and I'll go ahead and reserve the remainder of my time.  Thank you, Your Honors. May it please the Court, Marcus Sweetser for Erika Henry. This is my first time before the Court of Appeals. I think Your Honors touched on a lot of the points that I would like to touch on. I just want to say it's an honor and privilege to be here for the first time as well. I want to start with the standard of review that I think you've already spoken to. This is a Qualified Immunity Appeal on Interlocutory Review. So Henry's facts have to be accepted as true. Those disputes, according to the trial court, include her job duties. They include the alleged disruption, whether it was an actual disruption and whether it was a substantial disruption, and they also include the State's pretextual motives. The trial court, Judge Dimke, was extremely thorough in her review of a lengthy record and found multiple genuine disputes of those material facts. And so the State's invitation here to reweigh those facts at this stage is not proper under Qualified Immunity Review. What do you do, Counsel, with this Court's statement in Moran that the law is rarely going to be clearly established in this area? You've got a Pickering balancing test. What do you do with Moran? Yeah, great question, Your Honor. And I do think that's where the State leans most heavily in this case on. There's a statement in Moran about the rarity of finding on the Pickering balancing. Right. And then also whether or not Moran addresses a high level policymaker. Now, they changed that language a bit in their briefing. And today they call it a high level executive. So we have to look closely at Moran, including a case subsequent to Henry, the case of Damiano, I believe also addresses that. So looking at Moran, the State leans on that and characterizes Henry as a high level policymaker. I think there's really two big problems with that statement. The first is Henry's job duties are in dispute. They've produced a job description that is not applicable to Henry. It's not even her title. It's unsigned by Henry and Henry testified she doesn't recognize it. Second, looking to the facts in Moran, Moran involved an employee that was working under an elected insurance commissioner and sided with other employees in the insurance under the insurance commissioner to directly dispute the policy the insurance commissioner had run on and was seeking to put into place. And this was done, according to that case, multiple times. It was direct insubordination, according to the Moran court. Now, Henry did nothing of the sort. When Henry sends her email, first of all, she had no duty to complain to the Spokane Health Board about personnel decisions. She'd never spoken to any of the Spokane Health Board's members personally or in her role within the Department of Health before. She'd never spoken with Amelia Clark before. She did nothing to seek to directly undermine the Department of Health, nor Dr. Shah. Recall that Dr. Shah, at the point that she sends her email, had not even been appointed to the Department of Health yet. He came in afterwards. So Henry does nothing to directly undermine. And on top of that, Henry was actually told that she could send an email. She had the right to send an email as a private citizen, both before and after the email was brought up at the meeting. Before sending the email, Henry talked to her legislative policy advisor and government affairs official, the resident experts on these issues, where she's told, you have the right to send an email as a private citizen. And then afterwards, when the email comes out in the meeting, she immediately notifies her chief of staff, Todorovic, who texts her back, and this is in the record, and says, you had every right to send that email as a private citizen to your local board. So here we see that Henry's doing nothing to undermine and actually took active steps to take her public hat off and to communicate as a private citizen, as is her right under Freytag. So in actuality, what this was, was a new secretary that was coming into Spokane into a politically tense situation that had nothing to do with Henry. And because of the outburst that's described as passionate and direct by Mayor Kevin Freeman, he formed a misguided but politically motivated belief that firing Henry would somehow reset the relations with the Spokane Board of Health. That turned out not to be true, that by firing Henry, it did nothing to help the relations nor fix anything at all. So again, moving back to Moran and one last point on this issue, to show that Henry's email did nothing to undermine, she sends the email four months before it's ever brought up by Mayor Kevin Freeman at the instigation of Amelia Clark, the official that she criticized. And during those four months, what happens? There's no complaints about Henry. There's no performance issues. There's no operational disruption. There's no diminishment in the collaboration between the two boards that's associated to Henry. When the state board's investigator is asked, can you identify any actual impact that was caused by Henry's email? And he's unable to identify any. If the state's own investigator can't identify an impact, the state does not get to conjure one up at this stage in the proceedings. Well, going back to that whole question of the adequate justification, it can't be mere speculation, the cases have indicated. But we have here a situation where your friend on the other side said, well, you know, they have this big meeting. There's a contentious meeting. There's a breakdown in trust. So with those facts, what kind of evidence do you have that that still falls on your side of this Pickering balance test? Yeah, and just because you use the word adequate, Your Honor, I just want to make sure I clarify your question. We're speaking here about prong four under Pickering and not prong five, which would be some alternative adequate justification. Thank you, Your Honor. With that, speaking to the disruption that they've brought up as a public employee, speech is certainly not it's certainly not unlimited. There are limits to public employee speech. That's that's recognized. But let's look to the cases where disruption was actually found. City of San Diego versus Roe provides a great example there. The United States Supreme Court was dealing with a police officer that had created pornographic videos while in uniform and published them. That caused a recruitment problem for that police department, in particular, the ability to recruit female officers. That's operational disruption. Henry's case is far removed from that. There's no operational disruption at all. For some of the facts that I've already mentioned again, there's four months after she sends the email. Nobody brings it up. There's no complaints, negative performance reviews. The Spokane board members themselves testified that until Amelia Clark instigated this, they had no idea who Henry was and did not even associate her email with the Department of Health. They also testified that Henry's email had no impact on the relations and that removing Henry did nothing to alter the relations between these two entities. I want to pause there because I think you brought up two really critical, important points, Moran, and you also brought up the disruption. Did you have any questions on that, the factual record or the law before I continue to some of my other points? I'm not sure if it fits here, but if we affirm, could the defense of qualified immunity be raised at trial? It could, Your Honor. Yes, it's a genuine dispute of material fact, but I believe the case law instructs the trial judge to be careful about the way that the jury instructions are provided in that regard. So I think there are some perhaps special interrogatories that the trial court may consider, but the trial court cannot answer the purely legal question of qualified immunity. Did I properly answer that? Well, I mean, what happens when it goes back for trial is qualified immunity, of course, it gives you a right not to go to trial if it's granted. But it seems to me that this, a remand because of a factual issue would not foreclose the immunity question from being litigated at the trial level. I believe I'm tracking that. I don't think we have a disagreement on that, that it remains an open question. The judge would still be responsible for determining the ultimate question of whether the right was clearly established, assuming after the jury resolves the various material factual disputes. That is my understanding of our current state of the jury's prudence. There's going to be some genuine issues in material fact. Again, here, I think the big ones are the job duties, the state's protectional motive and, excuse me, the alleged disruption, whether it was actual and substantial or there's a reasonable prediction of a substantial disruption. The judge would also have to ultimately resolve the Pickering balancing question on step one, whether there is a violation both on the merits and at step one in qualified immunity after the jury resolves material questions of fact about whether she was speaking as a judge and whether she actually caused, her email actually caused disruption and to what extent. Yes. Yes, that's my understanding, Your Honor. I have a few other points that I want to raise per conic, which is just the context in which this email comes in. That's going to take just about a couple minutes to do. So before I go there, was there further questions that the court would like me to  OK, I do want to read, so if the court's able to reach the merits here, and again, just to declare our position is that there are disputes of fact here that preclude the finding that the state is asking for here. But if the state were to reach the merits, taking Henry's facts as true in order to follow the defendant's position, which is an expansion of Moran, no public employee would feel safe to communicate with their elected officials about a public safety issue without fear of jeopardizing their livelihood. That cannot stand. So per conic, we set the context. Henry's email was sent and she was told she had the right to send this email as a private citizen to her local health board. So she writes it from her own home, from her personal Gmail, not using her title, not referencing the Department of Health, signing it only in her personal name and sending it to elected members on the Spokane Health Board. Her email is not sent in a vacuum. It's amidst a wave of community protest over administrator Clark's unlawful outsourcing of Spokane's health officer and the public safety implications of Clark's actions in ousting the administrative offer were immense. Without an acting local health officer, Spokane lacked legal authority to implement mitigation efforts in response to a global pandemic, COVID. So protests in response to Clark's actions erupted in the streets. Thousands of people in Spokane were marching in the streets during the pandemic. There was a Change.org petition that amassed thousands of signatures, and there were thousands of citizen emails that were sent to the Spokane Board of Health. Those Spokane Board of Health members were publicly calling for citizen input before the upcoming vote about whether or not to reinstate Dr. Lutz. And the spokesman review, our leading newspaper, said people will die because of the actions taken by Amelia Clark. So Henry urged the Spokane Board of Health in her personal capacity to reinstate Dr. Lutz to protect the community where both her husband and her children attended public school on a daily basis. This was no different than Henry walking up to the podium and saying the exact same words to the elected board members before they took that vote. It's no different than a photo being captured of Henry marching in the protest. She did not do that. But if there were a photo that were captured of Henry walking in a protest to communicate her position as a private citizen and that being dug out of an archive months later, it is no different than that. These are fundamental First Amendment rights to both speech and petition to our elected representatives that we enjoy in a democratic society. And our courts have long recognized this. So just to set the record on this, per Freytag and Greeson, which we briefed thoroughly, our courts have long recognized that speech and petition to elected officials regarding threats to public safety, government misconduct or abuse all sit at the highest rung of First Amendment protection. And so when they speak about the balancing test under Pickering, it is those rights at the highest rung of first protection that have to be outweighed by the substantial disruption that they're alleging. And here there is not. There is no substantial disruption and there's no reasonable prediction of a substantial disruption. Those facts have been thoroughly litigated. Those facts have been thoroughly reviewed by our trial court judge and the trial court judge properly ruled that those represent genuine disputes of material fact. Counsel, how would you respond to the assertion that somebody must be liable for what happened here? But Dr. Shaw is not. He came to this very late, early in his tenure as his position. What's his motive to do anything? Well, the record is thorough with Dr. Shaw's statements about his motive in wanting Henry to be terminated. He first testifies that it didn't take a leap of imagination for him to assume Henry should be terminated. It's the very next morning after reading the contents of Henry's email that he he sends an email to the chief of staff and says, I want to talk about how we're handling this moving forward. This is the same chief of staff that just the day before had told Henry she had every right to send this email. We see from there that chief of staff opens the investigation. During the investigation, Shaw makes numerous statements that Henry should have sent the email anonymously. Your Honor, did you have? Sorry, yes. It reminded me of a question I have about the record. Apologies for interrupting that. My understanding is after the meeting involving Dr. Shaw and the Spokane Health Board, that two emails were given to Dr. Shaw. One was the plaintiff's email. One was an email that was actually sent by Tony Smith. Is that correct? And Tony Smith was also a former employee of Spokane who was hired by the state. Is that correct? I just see that I'm out of time. I want to be respectful. May I respond? Yes. Thank you, Your Honor. Yes, the record does show that a confident an envelope marked confidential was handed to Dr. Shaw. And in that envelope, multiple emails, including an email from Tony Smith, was contained in that envelope. It was multiple emails from Department of Health employees that were sent at this same time period. Those emails were not produced by the state in discovery. So I can't speak to the specifics of what those emails said. But there is evidence in the record that that is what that envelope contained. So if there's no further questions, in closing, Your Honor, in this country, we should not be firing citizens for writing their elected officials about public safety concerns. We should be protecting them. We urge the court to affirm. Thank you. I want to first point out, Your Honor, that in arguments of counsel just recently, he said it was this was an issue of public health. That was what this email was about. And that's exactly what it is. Ms. Henry was the assistant secretary of health. Her job was to provide technical assistance on emergency planning and responses to local health boards during the pandemic. She was also responsible for approving grant and aid to these local health boards. This was her job, was to prepare for and deal with the pandemic that she was commenting on. So it was clearly within the statement of her job duties. Moreover, the court in Freitag, this court and counsel likes to talk about Freitag, but Freitag, the court made a specific factual finding that that Freitag's email to the senator in that case was on a sexual harassment claim, was not within her job duties. It wasn't specific to her job, and therefore it was protected speech. That's not the case. In this particular case, moreover, the Moran court was brought up and that is why this case is not clearly established. Moran has said when you look at all of the factors that are in play, it is rarely, if ever, clearly established. Freitag is one factor. All the other cases are single individual factors. The plaintiff, Ms. Henry in this case, argues this case as if it's an elements case, not a factor test, in that one element is missing, therefore a party prevails. That's not what Pickering requires. Pickering is a balancing test. It requires multiple factors to be looked at and then to be determined if those are clearly established. And in this case, there is no case on point that establishes that those factors are clearly established at the time of Ms. Henry's termination. Given the plaintiff's reliance on Freitag and others, as we briefed, especially the Gilbrecht case, which actually sets forth eight factors that aren't discussed by Ms. Henry, but actually indicate more reason that the Pickering balancing test is not clearly established. Those factors in Gilbrecht, high-level executive, speaking on a matter related to their job duties, all relate and actually enforce and weigh in favor of this not being protected speech. And given that the evidence in this case is not clearly established to be a constitutional violation, we'd ask that the Court reverse the denial of summary judgment. Thank you. Thank you, counsel.
judges: McKEOWN, SUNG, Fitzwater